■ In the Matter of CHRISTINA LL., a Child Alleged to be Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; STEVEN LL., Appellant. (And Two Other Related Proceedings.) [650 NYS2d 815] —Peters, J. Appeals (1) from an order of the Family Court of Columbia County (Czajka, J.), entered September 21, 1995, which granted petitioner's application, in a proceeding pursuant to Family Court Act article

10, to adjudicate respondent's child to be neglected, (2) from an order of said court, entered September 21, 1995, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 8, to issue an order of protection against respondent, (3) from an order of said court, entered November 30, 1995, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to find respondent in violation of the order of protection, and (4) from a order of said court, entered November 30, 1995, which issued a modified order of protection.

Respondent is the father of Christina LL. (born in 1985). Following the separation of respondent and the child's mother in 1991, the mother and the child moved from the marital home in Saratoga County to Columbia County. Sometime thereafter, respondent decided to move into an apartment approximately 130 feet down the road from them. At such time, it appears that a contentious divorce action was pending in Supreme Court and that the acrimony continued in actions filed in Family Court, City Court and in different local courts. In connection with a harassment and contempt of court charge initiated by the mother in Chatham Village Court, respondent was sentenced to six months in jail. It was the activity that respondent engaged in while incarcerated that became the subject of these proceedings.

By respondent's own admission, between January 6, 1995 and May 5, 1995, he wrote his daughter approximately 150 to 200 letters while he was incarcerated. Based upon their contents, the child's Law Guardian commenced a proceeding pursuant to Family Court Act article 8 alleging that respondent's conduct constituted harassment in the second degree. A month later, again based upon the contents of these letters, petitioner commenced a proceeding pursuant to Family Court Act article 10 alleging that respondent had neglected his child. Since the two petitions involved the same underlying allegations, both petitions were prosecuted simultaneously, without objection.

A hearing was commenced in July 1995. Although the mother was not a party to either proceeding, she was permitted to participate through her counsel, Philip Feiring. At the conclusion of the fact-finding hearing, Family Court, with the support of the Law Guardian, adjudicated the child to be neglected and further found respondent to have committed the family offense of harassment in the second degree. Prior to the commencement of the dispositional hearing, respondent moved to disqualify Feiring based upon a conflict of interest. Although

the motion was denied, attorney Alan Joseph was assigned to represent the mother during the remainder of the hearing.[1]

The order of disposition granted sole custody of the child to the mother and directed respondent to undergo mental health treatment. It further ordered respondent to have no contact with the child, move at least a one-mile distance away from her home and remain at least 1,000 feet away from her or at an out-of-sight distance. Family Court also issued an order of protection requiring respondent to comply with all of these conditions, except the mental health treatment. Approximately one month after the issuance of these orders, respondent was charged with three separate violations of the order of protection. After a hearing, the court sustained the allegations and, *inter alia*, sentenced respondent to six months in County Jail, three of which were suspended.[2] He now appeals.[3]

Before addressing respondent's first contention, we ponder how long we must emphasize the critical need for Family Court to fully detail its findings in a proceeding pursuant to Family Court Act article 10. We reiterate: "A precise statement of the facts relied upon by Family Court not only permits intelligent appellate review, but 'encourages thoughtful judicial decision-making by forcing an articulation of the basis of the decision' and 'reduces the possibility that judges will make a finding based upon some vague and amorphous sense that the parents are somehow not meeting the child's needs' " (*Matter of William EE.*, 157 AD2d 974, 975, quoting Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1051, at 413-414). To further complicate review, despite repeated requests made to both Thomas Donohue, an attorney with petitioner, and William Better, the Columbia County Attorney, petitioner has wholly failed to file a brief in this proceeding despite individual assurances that one was forthcoming. We find this neglectful practice (*see, Matter of Jamie J.*, 209 AD2d 896, 898) to be a violation of the County Attorney's obligation imposed pursuant to County Law § 501 (*see, People v Culkin*, 233 AD2d 672 [decided herewith]; *People v Sawyer*, 188 AD2d 939).

---

1. Feiring advertised that he was now "associated" with an attorney who had previously represented respondent in connection with various matters in the Chatham Town Court emanating from his relationship with the mother.

2. A subsequent order was entered which modified the order of protection.

3. We initially note that respondent's failure to serve a notice of appeal on the Law Guardian, as an "adverse party" entitled to notice (*see*, Family Ct Act § 1115 [b]), was properly cured (*see*, CPLR 5520). As to the failure to serve the mother, a nonparty to these proceedings, we find no jurisdictional defect.

Now left to determine whether petitioner has adequately sustained its burden of establishing that respondent's course of conduct in sending 150 to 200 letters to his daughter constituted neglect, we recognize that it must be shown, by a preponderance of the credible evidence (*see,* Family Ct Act § 1046 [b] [i]), that respondent failed to exercise a minimum degree of care and, as a result of that failure, the child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired (*see,* Family Ct Act § 1012 [f] [i] [B]; *Matter of Billy Jean II.,* 226 AD2d 767, 769). Since even a single incident could be sufficient to sustain a finding of neglect (*see, Matter of Cody P.,* 227 AD2d 724, 725), most certainly a course of conduct over a four-month period could be sufficient. Thus, respondent's efforts to dismiss this behavior as an isolated incident due to his depression emanating from his separation from his child while incarcerated is simply unavailing (*see, Matter of Jason B.,* 117 Misc 2d 480).

The record contains a mere sampling of the 150 to 200 letters written to this $9^{1}/_{2}$-year-old child living alone with her mother. Such letters contain bigoted, racist and degrading comments which are disparaging to not only the child's mother and relatives, but also to their friends and the community in which they live. Had the comments made about the child's mother been excluded, we would agree with respondent that while the contents of the letters are offensive they would be insufficient to sustain a finding of neglect. However, considering the comments made to this child about her mother, fully recognizing the litigious and acrimonious atmosphere in which this child has existed since, at least, her parents' separation in 1991, we conclude that the repetitive characterization of the mother as "evil", the constant blame of respondent's continued jailhouse residence on her spiteful acts, coupled with respondent's elaboration of his cathartic fantasy about her death and the "sheer joy" it would bring, created an imminent risk of harm to this child, requiring the aid of the court (*see,* Family Ct Act § 1012 [f] [i] [B]; *Matter of Billy Jean II., supra; Matter of Zariyasta S.,* 158 AD2d 45).

We find this determination supported by respondent's testimony that he intended his child to receive these letters, his own characterization of their contents as "inappropriate", the testimony of the Child Protective Services investigator who assured that the child was "used to the tone of these letters", and the testimony of the mother who confirmed that she read them. Neither the lack of actual injury to this child nor a formal diagnosis of respondent's mental or emotional state at

the time that he wrote them is found by us to be fatal (see, *Matter of Karl L.*, 224 AD2d 841; *Matter of Billy Jean II., supra*; *Matter of Zariyasta S., supra*; *Matter of Tami G.*, 209 AD2d 869, *lv denied* 85 NY2d 804).

We also reject respondent's contention that such evidence was insufficient to sustain the charge of harassment in the second degree (see, Penal Law § 240.26 [3]). Noting that the element of intent can be inferred from the circumstances surrounding respondent's actions (see, *Matter of Reiss v Reiss*, 221 AD2d 280), considering the number of letters written, their contents, the history of violence and harassment in this family, and respondent's admission that he intended for the child to read them, we find sufficient evidence exists to support the charge.

Similarly unavailing is respondent's contention that Family Court abused its discretion when it denied his request for an adjournment of the dispositional hearing so he could call his therapist as a witness. With such adjournment appropriate upon "good cause shown" (Family Ct Act § 1048 [a]), we find that respondent failed to make the required showing. The court detailed the reasons underlying its refusal which included the failure of counsel to arrange for the therapist to appear during any of the scheduled hearing dates. The court further noted that respondent refused to accommodate the mother's request that the matter be adjourned due to the hospitalization of her counsel. We further find no error in the denial of respondent's disqualification motion since Family Court sought to protect respondent's " 'right to be free from the apprehension of prejudice' " (*Matter of Lambrou*, 208 AD2d 1093, 1094, quoting *Murphy v Colbert*, 203 AD2d 619, 620), when it assigned a new attorney to represent the mother for the remainder of the dispositional hearing.

As to the disposition imposed, we decline to disturb it. Carol Levett, a psychologist who diagnosed respondent as suffering from a personality disorder, concluded that he was in need of psychiatric treatment or medication. Respondent admitted that he was prescribed Diazepam three times a day for stress or anxiety and that he only "used it as needed". Levett's interview with the child revealed much anxiety regarding respondent. Based on these facts, we find a sufficient basis for Family Court to have fashioned its disposition.

As to the sentence imposed for the violation of the order of protection just days after its issuance, again we find no abuse of discretion. The evidence revealed that respondent received such order, understood its terms and had been advised of the

consequences of a violation. Notwithstanding such advice, he violated it on three separate occasions. Thus, Family Court's six-month jail term, with three months suspended, was entirely appropriate (see, Family Ct Act § 846-a).

We have reviewed all remaining contentions and find them to be without merit. Accordingly, we affirm the orders of Family Court.

Mercure, J. P., Yesawich Jr., Spain and Carpinello, JJ., concur. Ordered that the orders are affirmed, without costs.